**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAMADOU DIALLO,<br><br>                    Petitioner,<br><br>          v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>                    Respondents. | Case No. 5:26-cv-03090-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

## I.

## <u>INTRODUCTION</u>

On June 4, 2026, petitioner Mamadou Diallo, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Desert View Annex Detention Facility in Adelanto, California. Petitioner contends his detention violates his rights to substantive and procedural due process under the Fifth Amendment, the Administrative Procedure Act ("APA"), and the Immigration and Nationality Act ("INA"). Petitioner also contends respondents violated his Fourth Amendment right to be free from unreasonable seizure. The Petition is supported by the declaration of Carrie LeRoy ("LeRoy Decl.") and exhibits. Petitioner seeks immediate release from immigration custody, as well as declaratory and injunctive relief.

1

Respondents filed an Answer on June 12, 2026.  Docket no. 8.  The Answer is supported by the declaration of Cortney Lenardson ("Lenardson Decl.").  *Id.* Petitioner filed a Reply on June 15, 2026.  Docket no. 9.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief.  The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

**II.**

**BACKGROUND**

Petitioner is a native and citizen of Guinea.  Pet. ¶¶ 4, 26.[1]  Petitioner is a political refugee who waited almost a year in Mexico for a CBP One appointment.[2]  *Id*. ¶ 5.  On December 24, 2024, petitioner presented himself at the border for his CBP One appointment and told immigration officials he was seeking asylum in the United States.  *Id*.; *see* LeRoy Decl., Ex. A.  Immigration officials screened him and released him into the United States on humanitarian parole under 8 U.S.C. § 1182(d)(5).  Pet. ¶ 6; *see* LeRoy Decl., Ex. C. Petitioner applied for employment authorization on April 7, 2025.  Pet. ¶ 8.

On April 8, 2025, the U.S. Department of Homeland Security ("DHS") announced that it was canceling parole for more than 900,000 noncitizens who had entered the

---

[1]    The Petition is signed only by petitioner's counsel and is not verified by petitioner.  The court will presume that the facts alleged in the Petition are accurate: (1) for the purposes of Part II of this opinion and if not disputed by respondents; (2) if supported by documents or other evidence in the record; or (3) if the information could have been within counsel's personal knowledge.

[2]    Created in 2020, CBP One was a mobile application created by U.S. Customs and Border Protection ("CBP").  *See* https://www.americanimmigrationcouncil.org/fact-sheet/cbp-one-overview/.  In 2023, CBP One was expanded to allow asylum seekers without entry documents to schedule appointments at designated ports of entry.  *See id.* CBP One is no longer available.  *See id.*

United States via appointments scheduled on the CBP One application. *Id.* ¶ 9. On April 11, 2025, petitioner received what appeared to be a mass email from CBP notifying him of the termination of his parole. *Id.* ¶ 10. The email did not provide an individualized explanation for the termination. *Id.*

Petitioner filed an application for asylum and withholding of removal on July 2, 2025. *Id.* ¶ 11. On July 21, 2025, petitioner appeared at the Master Calendar hearing. *Id.* ¶ 12. ICE moved to dismiss the case and the immigration judge provided petitioner 10 days to respond. *Id.* ICE officers then arrested petitioner at the courthouse. *Id.* ¶¶ 12, 52. Petitioner did not receive an individualized notice specifying why he was redetained, nor did he receive an individualized custody determination. *Id.* ¶¶ 13-14.

Petitioner filed a motion for bond in immigration court. LeRoy Decl. ¶ 15. On August 12, 2025, the immigration judge found he did not have jurisdiction to conduct a custody redetermination and so denied petitioner release from custody. *Id.*, Ex. D.

On December 13, 2025, DHS filed a motion to pretermit petitioner's asylum claim based on an Asylum Cooperative Agreement between the United States and Uganda. Pet. ¶ 15. On February 3, 2026, an immigration judge granted DHS's motion to pretermit petitioner's asylum claim and ordered him removed to Uganda. *Id.* Petitioner appealed this decision to the Board of Immigration Appeals ("BIA") on February 27, 2026. *Id.*; *see* https://acis.eoir.justice.gov/en/.

Meanwhile, on January 22, 2026, petitioner received a bond hearing pursuant to *Rodriguez v. Holder*, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). *Id.*; *see* LeRoy Decl., E. An immigration judge denied petitioner's request for bond, finding, without explanation, that petitioner is a flight risk. Pet. ¶ 15; LeRoy Decl., Ex. E.

//
//
//

3

## III.

## DISCUSSION

Petitioner raises five claims for relief: (1) his detention violates his substantive due process rights under the Fifth Amendment; (2) his detention violates his Fifth Amendment procedural due process rights; (3) his initial arrest constituted an unreasonable seizure under the Fourth Amendment; (4) his detention violates the APA; and (5) his detention violates the INA.  Pet. ¶¶ 56-84.

**A.**    **This Court Has Jurisdiction Over the Claims in the Petition**

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).   Here, petitioner argues he should be released from respondents' custody because his re-detention without a hearing following his initial release violated, inter alia, the Due Process Clause of the Fifth Amendment.  *See* Pet. ¶¶ 56-67.  He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted).  The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)

4

(citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B.** **Respondents' Arguments Regarding Exhaustion Are Inapplicable**

Respondents argue the Petition should be denied because petitioner has not exhausted his administrative remedies. Answer at 2-3. Specifically, respondents contend petitioner's "*Rodriguez* removal order is on appeal with the BIA," and petitioner must first exhaust his appeals. *Id.* Respondents appear to be conflating the denial of bond at the *Rodriguez* hearing and the removal order. The immigration judge's removal order and order denying bond at the *Rodriguez* hearing are separate. In any event, petitioner does not raise a claim challenging the removal order or the adequacy of the *Rodriguez* bond hearing, and is not asking this court to overturn either. Thus, neither this court's jurisdiction to review those decisions nor petitioner's need to exhaust his remedies are at issue.

**C.** **Petitioner's Re-Detention Without Adequate Procedural Protections Violates Due Process**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454,

460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

### 1.   Petitioner Has a Protected Liberty Interest

The first step asks whether respondents have interfered with petitioner's protected liberty interest.  Petitioner argues he has a liberty interest in his conditional release from immigration custody.  *See* Pet. ¶¶ 16, 61, 64.

Conditional release from custody may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997).  "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute."  *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Young*, 520 U.S. at 147-49); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'"  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482).  District courts in the Ninth Circuit have found this liberty interest remains even if a noncitizen's humanitarian parole has expired.  *See, e.g., Totskii v. LaRose*, 2026 WL 905331, at *2 (S.D. Cal. Apr. 2, 2026) ("[C]ourts have repeatedly held that liberty interests do not expire when parole does."); *Nath v. Chestnut*, 2026 WL 743356, at *1-*2 (E.D. Cal. Mar. 17, 2026) (petitioner maintained a liberty interest even after his parole was terminated and was entitled to a pre-deprivation bond hearing); *Mody v. Warden*, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (liberty interest remained after the expiration of parole); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) ("petitioner's liberty interest did not expire along with his parole"); *Ramirez Tesara v. Wamsley*, 800 F. Supp.

3d 1130, 1136 (W.D. Wash. 2025) (petitioner's liberty interest "did not expire along with [his] parole agreement").

In *Morrissey*, the Supreme Court explained that "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 482. "Subject to the conditions of [their] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.*

This was petitioner's situation. He arrived in the United States in December 2024 and has resided here ever since. *See* Pet. ¶ 5. Petitioner established ties to the community and a life for himself in the United States while released on parole and therefore has acquired a protected liberty interest in his release from immigration custody. *See id.* ¶¶ 4, 16, 53; LeRoy Decl., Ex. G. *See e.g., Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1163 (C.D. Cal. 2025); *Mody*, 2026 WL 51976, at *5-6; *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("petitioner has a liberty interest in his continued release on bond"); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025); *R.D.T.M.*, 2025 WL 2686866, at *4-5; *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026); *Osmonaliev v. Cantu*, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-22 (W.D. Wash. 2025).

**2.**     **Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Re-Detention Under the Due Process Clause**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge . . . .*" *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the core of the liberty protected by the Due Process Clause"). Petitioner has lived in the United States since his arrival and established a normal life and ties to the community. *See* Pet. ¶¶ 4, 16, 53; LeRoy Decl., Ex. G. As such, his personal interest in remaining out of immigration custody is high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. Here, petitioner received one bond hearing months after his re-detention, but did not receive a hearing before he was taken back into immigration custody. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents made such a determination with respect to petitioner when they released him into the United States, concluding he presented neither a risk of flight nor danger to the community. *See* 8

8

C.F.R. § 212.5(b) (requiring that a non-citizen "present neither a security risk nor a risk of absconding" before being granted parole).  Petitioner states he complied with all of the requirements of release.  Pet. ¶¶ 20, 73.   Respondents do not contest this.  Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner without additional process.  As other courts have repeatedly recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing."  *Meneses*, 811 F. Supp. 3d at 1164; *see also R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1036; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025).  The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by immigration courts.  *See Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted); *see also Pinchi*, 792 F. Supp. 3d at 1036.  Moreover, because petitioner was already once found not to be a danger to the community or a flight risk by respondents, the government has minimal interest in detaining him at all, absent some showing of changed circumstances.  *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

In sum, given petitioner's interest in being free from immigration detention, the high risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors favor petitioner.  Therefore, the

9

government's re-detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment.

But the inquiry does not end here. Respondents appear to argue that any constitutional violations were remedied by petitioner's post-deprivation *Rodriguez* hearing, at which the government had the burden to demonstrate by clear and convincing evidence that petitioner was a danger to the community or a flight risk.[3] Answer at 1. The question is whether the post-deprivation hearing satisfies due process.

"[T]he purpose of habeas remedies is to put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (citation and quotation marks omitted). The Ninth Circuit has found that a petitioner is only entitled to relief if he can demonstrate prejudice from the due process violation; however, those cases did not concern pre-deprivation and post-deprivation hearings. *See Orellana v. Garland*, 2024 WL 2795192, at *2 (9th Cir. May 31, 2024) ("Generally, an individual may obtain relief for a due process violation only if she shows that the violation caused her prejudice, meaning the violation potentially affected the outcome of the immigration proceeding.") (cleaned up); *U.S. v. Landeros-Morales*, 840 F. App'x 911, 912 (9th Cir. 2020) (Assuming the immigration judge violated due process, "[petitioner] is not entitled to relief because he cannot demonstrate prejudice"). Indeed, the Supreme Court has found that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Mathews*, 424 U.S. at 331.

Accordingly, many district courts in this Circuit "have ordered release even where a belated bond hearing has taken place," *Kumar v. Rios*, 2026 WL 1764923, at *7 (C.D.

---

[3] Respondents also contend petitioner received a bond hearing on August 12, 2025. Answer at 1; Lenardson Decl. ¶ 10. To the extent respondents assert petitioner received a pre-deprivation (or equivalent) hearing on August 12, 2025, the record shows otherwise. Pet. ¶ 13; LeRoy Decl., Ex. D. The immigration judge found he did not have the jurisdiction to conduct a bond hearing. *See* Pet. ¶ 13; LeRoy Decl., Ex. D.

10

Cal. June 12, 2026) (listing cases), or taken the position "that any post-deprivation process cannot cure the constitutional violation when the non-citizen was entitled to pre-deprivation notice and hearing." *Andriasyan v. Warden*, 2026 WL 1601905, at *9 (C.D. Cal. June 1, 2026); *see, e.g.*, *Villegas Molina v. Mullin*, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (noting that the severe delay of post-deprivation bond hearings cannot undo the harms of immigration detention such as the loss of jobs and subpar medical care); *Mumaev v. Samaia*, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (a post-deprivation hearing cannot support a petitioner's continued detention when the underlying arrest, revocation of parole, and redetention violated due process); *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882 (C.D. Cal. 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a pre-deprivation hearing required by due process."). Even courts that have found a post-deprivation hearing may arguably satisfy due process have raised questions of prejudice and adequacy. *See, e.g., Herman v. DHS*, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) (finding petitioner "was likely prejudiced by being forced to litigate a bond hearing while he is detained . . . [since] detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing"): *Saballos Rosales v. Noem*, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (a deficient post-deprivation hearing is "no substitute" for the pre-detention process).

On the particular facts and circumstances of this case, the court agrees that petitioner's belated bond hearing – which occurred six months after his detention – did not remedy the due process violation. Because petitioner's re-detention was unlawful, the proper remedy here is release from custody. *See Singh*, 2025 WL 3251437, at *9; *Yataco*, 2025 WL 4065463, at *7; *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

//

//

11

### 3.   Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted).  In the context of both parole and probation revocations, the nearest analogues to petitioner's immigration parole revocation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon*, 411 U.S. at 782.  Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See e.g., Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases).  Indeed, in the immigration parole revocation context, courts have routinely found that individuals should be "afforded a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight." *Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *8; *Pinchi*, 792 F. Supp. 3d at 1038; *Padilla v. Bowen*, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025).

### D.   Petitioner's Remaining Claims

Petitioner also claims that respondents have violated his Fifth Amendment right to substantive due process, his Fourth Amendment right to be free from unreasonable seizures, the APA, and the INA.  Pet. ¶¶ 56-59, 68-84.  Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claims.  Petitioner may raise the claims again if he is subject to any future detention.

//

//

12

## IV.

## **ORDER**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Mamadou Diallo (A# 244-860-401) from immigration custody; (3) respondents shall return any confiscated property and documents to petitioner upon his release; (4) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (5) respondents shall file a status report no later than **August 13, 2026,** confirming that petitioner has been released from respondents' custody.

Dated: August 10, 2026

SHERI PYM
United States Magistrate Judge

13